COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Kelsey
Argued at Richmond, Virginia


KENNETH WAYNE MARCHIOLI-ACRA
                                          MEMORANDUM OPINION* BY
v.       Record No. 0671-04-2       CHIEF JUDGE JOHANNA L. FITZPATRICK
                                              MARCH 15, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

Robert E. Battle (Robert E. Battle, PC, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


        Kenneth W. Marchioli-Acra (appellant) was convicted in a bench trial of taking indecent

liberties with a child while in a custodial or supervisory relationship, in violation of Code

§ 18.2-370.1.  He contends on appeal that the Commonwealth failed to prove that he was in a

custodial or supervisory relationship with the victim at the time of the offense.  For the reasons that

follow, we affirm.

                                  I.  BACKGROUND

        Under familiar principles of appellate review, we examine the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

        The facts are not in dispute.  The victim, age fourteen, was scheduled to babysit for

appellant's two children while appellant and his wife were away on a business trip.  Because

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

heavy snowfall was predicted for the night before the scheduled trip, appellant's wife suggested that the victim spend the night at their home in order to avoid weather-related travel problems the following morning. On February 14, 2003, the victim's mother drove her to the appellant and his wife's home.

After the victim arrived, she had dinner with appellant and his wife. Appellant's wife went to bed immediately after dinner because she was not feeling well. The victim helped appellant do the dishes, then went to bed in the downstairs bedroom. Appellant went to bed in his bedroom.

When the victim awoke later that night, she found appellant sitting in a chair close to where she was sleeping, watching television. When appellant noticed that the victim was awake, he asked her if anything was wrong. She replied that she had a sore neck. Appellant left his chair and began to massage the victim's neck. The victim testified that at first, she "thought nothing of it because [she] trusted him." During the course of the massage, appellant moved his hands down the victim's neck, down her shirt and to her breasts. While appellant was touching her, the victim "was shocked because [she] saw him as a father figure . . . and he betrayed that." After massaging her breasts for a "couple of minutes" appellant stopped, told the victim that what he had done was wrong, and left the room.

The predicted snowfall came that night. As a result, appellant and his wife cancelled their trip and appellant drove the victim home after serving her breakfast.

Appellant was charged with taking indecent liberties with a child while in a custodial or supervisory relationship in violation of Code § 18.2-370.1. At the conclusion of the Commonwealth's evidence, appellant moved to strike on the ground that the Commonwealth failed to prove that he maintained a custodial relationship over the victim. The trial court denied

the motion. Appellant was convicted and sentenced to two years in prison suspended, conditioned on his good behavior for ten years.

## II. ANALYSIS

Appellant's sole contention on appeal is that the evidence was insufficient to convict him because the Commonwealth failed to prove that he maintained a custodial or supervisory relationship over the victim.

"When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998). We must affirm the conviction "unless it is plainly wrong or without evidence to support it." Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001).

Code § 18.2-370.1 provides, in pertinent part:

> Any person eighteen years of age or older who maintains a custodial or supervisory relationship over a child under the age of eighteen, including but not limited to the parent, step-parent, grandparent, step-grandparent, or who stands in loco parentis with respect to such child and is not legally married to such child, and who, with lascivious intent, knowingly and intentionally . . . feel or handle the sexual or genital parts of the child . . . shall be guilty of a Class 6 felony.

Appellant contends that the victim could not have been in his custody or under his supervision because his wife made the arrangements for the victim to stay at the home. He also argues that

- 3 -

his intent to leave the victim alone to supervise his children the next morning negated any custodial relationship. We disagree.

"Custody" has been generally defined as "the care and control of a thing or person." Black's Law Dictionary 384 (6th ed. 1990). Virginia courts have interpreted "custody" to include informal, temporary custody:

> In its language [the statute] is unambiguous, justifying no limitation of the meaning of "custody" to legal custody. To give it such a restrictive definition would eliminate, among others, teachers, athletic instructors and baby-sitters, all of whom might have temporary custody of children, from the purview of the statute.

Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208 (construing Code § 40.1-102, formerly Code § 40-112), cert. denied, 407 U.S. 922 (1972)).

Similarly, "the 'custodial' or supervisory relationship' required under Code § 18.2-370.1 is not limited to those situations where legal custody exists," but includes individuals who maintain a temporary, custodial relationship over a child, where the child "has been entrusted to the care and control of the supervising adult." Krampen v. Commonwealth, 29 Va. App. 163, 168, 510 S.E.2d 276, 278 (1999). "[O]ne may become a person 'responsible for the care of a child' by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility or court order." Snow v. Commonwealth, 33 Va. App. 766, 773, 537 S.E.2d 6, 9 (2000) (addressing custody in the context of Code § 18.2-371). "[A] custodial relationship arises when the supervising adult exercises care and control over the child, with the care including the 'responsibility for and the control of the child's safety and well being.'" Guda v. Commonwealth, 42 Va. App. 453, 459, 592 S.E.2d 748, 751 (2004) (quoting Krampen, 29 Va. App. at 168, 510 S.E.2d at 279).

Ample evidence supports appellant's conviction. The record establishes that the victim was a fourteen-year-old child who came to appellant's home to babysit his children. The

victim's mother drove her to appellant's home to spend the night and left her in the care of appellant and his wife.[1] Appellant clearly accepted her presence in the home. The victim had dinner with the family, helped appellant with the dishes, and remained in his home throughout the night. At the time of the assault, appellant was the only supervising adult present, as his wife was asleep in an upstairs bedroom. The victim's babysitting duties had not begun at the time of the offense. The victim described their relationship as follows: "I was shocked [at the attack] because I saw him as a father figure in my life because currently I really don't have one, and I put all my trust in him, and he betrayed that." As an adult and parent hosting a fourteen-year-old girl overnight in his home, appellant's role with respect to the victim was such that he was responsible "for the control of the child's safety and well-being." Krampen, 29 Va. App. at 168, 510 S.E.2d at 279. He thus stood "in loco parentis" to the victim when he sexually assaulted her. Thus, we hold that under the facts of this case, appellant exercised the necessary degree of control and care over the victim to satisfy the requirements of Code § 18.2-370.1.

Accordingly, we affirm the trial court.

Affirmed.

---

[1] We note that whether the victim's mother explicitly entrusted her to the appellant's care and supervision is not dispositive under Code § 18.2-370.1. See Snow, 33 Va. App. at 773, 537 S.E.2d at 9.