COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia

JOHN RICHARD TAYLOR

v.      Record No. 1653-14-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
CHIEF JUDGE GLEN A. HUFF
DECEMBER 8, 2015

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John R. Doyle, III, Judge

Steven A. Mirman (Mirman Law Firm, PLLC, on brief), for
appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

John Richard Taylor ("appellant") appeals his conviction of indecent liberties by a

custodian, in violation of Code § 18.2-370.1. Following a bench trial in the Circuit Court of the

City of Norfolk ("trial court"), appellant was sentenced to eleven months in jail. On appeal,

appellant contends that the trial court erred in denying appellant's motion to strike "because the

evidence presented did not establish the requisite element of maintaining a custodial or

supervisory relationship over the alleged victim." For the following reasons, this Court affirms

appellant's conviction.

I. BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial."

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*)

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

Between February 22 and March 5, 2013, K.B., thirteen years old at the time, was staying with Maria Averyahno ("China"), a friend of her mother, while her mother was out of town. China was living with appellant at the time, in appellant's house. Appellant's two daughters and mother were also living in his house during the relevant time period.

On two separate occasions appellant asked K.B. to go to his bedroom with him, where he had sexual intercourse with her. These two events occurred in the afternoon or early evening, while no one else was inside the house. On a third occasion, K.B. testified that appellant had sexual intercourse with her on his living room floor at about ten or eleven o'clock at night, while China and appellant's mother were away at work and the younger children were sleeping. Appellant was twenty-nine years old when all these events took place.

In October 2013, K.B. told her school guidance counselor that appellant had sexually assaulted her. The guidance counselor reported this information to the school resource officer, who contacted the Norfolk Police Department. In response, appellant was arrested and later questioned by Investigator Desanctis ("Desanctis"). Desanctis testified that after appellant was advised of his Miranda rights, he admitted that K.B. had stayed at his house but initially denied having sex with her. Appellant later withdrew this denial, confessing to Desanctis that he "had made a mistake" and that he and K.B. had sex in the living room of his house. During the trial, appellant also admitted that for some of the time between February and March 2013, he was "left caring for [K.B.]." China also testified that although she was present in the house in the mornings and afternoons, she worked at night and left the children in appellant's care because he was the only adult present in the house during that time.

Appellant was charged with two counts of carnal knowledge of a minor, in violation of Code § 18.2-63, and three counts of indecent liberties by a custodian, in violation of Code § 18.2-370.1. Appellant moved to strike the Commonwealth's evidence on the ground that there was insufficient evidence to prove he had "custodial responsibility" for K.B., which the trial court denied. At the close of all the evidence, the trial court found K.B. to be a credible witness and found appellant's confession to Desanctis valid. Nevertheless, with respect to the first two counts of indecent liberties, the offenses that occurred during the day, the court found appellant not guilty because there was "reasonable doubt about whether [appellant] really was in a relationship as a baby-sitter with [K.B.]." As to the third count of indecent liberties, however, the court convicted appellant, finding

> a third offense occurred in the evening, ten-, eleven o'clock at night *when all the other adults were going to be away, and at a time when she'd be going to bed* and all that . . . . I find that he was, essentially, a baby-sitter for her on that occasion, given the circumstances of that event.

(Emphasis added).

This appeal followed.

## II. STANDARD OF REVIEW

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (citations omitted). We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,

319 (1979). In doing so, this Court "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

### III. ANALYSIS

On appeal, appellant contends that the trial court erred "because the evidence presented did not establish the requisite element of maintaining a custodial or supervisory relationship over the alleged victim." Specifically, he argues "there was no evidence that [appellant] ever undertook such a responsibility or exercised any supervisory control over KB."

Code § 18.2-370.1(A) provides, in part, that it is a Class 6 felony for an adult to take indecent liberties with a child under the age of 18, over whom the adult "maintains a custodial or supervisory relationship." "The purpose of the statute 'is to protect minors from adults who might exploit certain types of relationships.'" Linnon v. Commonwealth, 287 Va. 92, 98, 752 S.E.2d 822, 826 (2014) (quoting Sadler v. Commonwealth, 276 Va. 762, 765, 667 S.E.2d 783, 785 (2008)). Whether a given relationship is "custodial or supervisory," for purposes of this statute, turns on "whether the defendant 'had the responsibility for and control of the child's safety and well-being.'" Id. (quoting Krampen v. Commonwealth, 29 Va. App. 163, 168, 510 S.E.2d 276, 278 (1999)).

Custody has been "broadly construed" by Virginia courts "to include those with informal, temporary custody." Guda v. Commonwealth, 42 Va. App. 453, 458, 592 S.E.2d 748, 750 (2004). Therefore, under Code § 18.2-370.1, the custodial relationship is not limited to "the specific entrustment of the child to the care of the adult" but also arises "when the supervising adult exercises care and control over the child." Id. In fact, "'one may become "responsible for the care of a child" by a voluntary course of conduct and without explicit parental delegation of supervisory responsibility.'" Id. (quoting Snow v. Commonwealth, 33 Va. App. 766, 773, 537

- 4 -

S.E.2d 6, 10 (2000)). "Whether such a relationship exists at the time of the offending conduct is a matter of fact to be determined on a case by case basis." Sadler, 276 Va. at 765, 667 S.E.2d at 785. "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'" McGee v. Commonwealth, 25 Va. App. 193, 198 n.1, 487 S.E.2d 259, 261 n.1 (1997) (*en banc*).

Therefore, in Kolesnikoff v. Commonwealth, 54 Va. App. 396, 404-05, 679 S.E.2d 559, 563-64 (2009), this Court held the evidence was sufficient to find a custodial relationship even though the appellant had not been "specifically entrusted" with care of the minor. Although there was no clear agreement or formal arrangement between appellant and the minor's family for the minor to spend the night at the appellant's home, the Court found there was sufficient evidence for the trial court to find that the appellant did exercise the requisite responsibility and control as a supervising adult at the time the sexual acts occurred. Id. at 404, 679 S.E.2d at 563. Specifically, the Court reasoned that the appellant "acted 'in the nature of a baby-sitter'" when he asserted his authority over the minor and his own son, telling them both to go to bed, and testified that he was "concerned about a video game's effect on both boys, intervening as he saw fit." Id. The appellant was aware of the minor's presence in his home, and the evidence supported the conclusion that the appellant had consistently "'maintained a custodial or supervisory relationship' over [the minor]" at the time the offense occurred. Id.

Likewise, in Snow, this Court held that one may assume the responsibility for care of a child "by a voluntary course of conduct and without explicit parental delegation." 33 Va. App. at 773, 537 S.E.2d at 10. In so holding, the Court affirmed the trial court's finding that the appellant was "responsible for the care" of the minors who were in the vehicle he had been driving, despite the fact that he was not specifically entrusted with their care. Id. The Court reasoned that once the father had been detained, the appellant assumed the position of "a 'person responsible for the care' of the minor occupants" by voluntarily jumping into the driver's seat

and speeding off knowing the children were in the car. Id. This "unilateral assumption of responsibility," while applied in Snow under the less stringent requirements of child abuse in Code § 18.2-371.1, has since been upheld as applicable in the context of Code § 18.2-370.1. See, e.g., Guda, 42 Va. App. at 460, 592 S.E.2d at 751; Sadler v. Commonwealth, 51 Va. App. 17, 23-24, 64 S.E.2d 313, 316 (2007), aff'd, 276 Va. 762, 667 S.E.2d 783 (2008).

Similarly, in this case, the evidence was sufficient to find that appellant maintained a custodial or supervisory relationship over K.B. when the offense occurred. K.B.'s mother left K.B. at appellant's home while she was out of town. China, who was specifically entrusted with K.B.'s care, in turn left K.B. in appellant's care while she went to work that night. Here, appellant testified that he shared in the "responsibility for and control of [K.B.'s] care and custody" while she was in appellant's home, including the night of the offense. This testimony was corroborated by China, who admitted she left the children in appellant's custody whenever she was not in the house. Furthermore, as in Snow, during the time of the offense, appellant was the only adult present and he was aware K.B. was left in his care. The trial court's determination that appellant was acting "in the nature of a baby-sitter" when he committed the offense against K.B. is not plainly wrong. See Kolesnikoff, 54 Va. App. at 404, 679 S.E.2d at 563. Contrary to appellant's assertion, the "specific charge of KB's custody and control *from her mother*" is not required. Appellant's offense was an exploitation of the supervisory or custodial role that he had assumed that night, the exact type of circumstance this statute was intended to deter.

### IV. CONCLUSION

For the foregoing reasons, this Court affirms the ruling of the trial court and finds the evidence was sufficient to find that appellant was in a custodial or supervisorial relationship with K.B. when the offense occurred.

Affirmed.